UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------X
BYLING LUCAS,

                Plaintiff,

-against-

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,
RANDY HOPSON, *Individually*, and LAMONT
BAILEY, *Individually*.

                Defendants.
------------------------------------------------------------------X

Civil Action No. 17 4164

**COMPLAINT**

Plaintiff Demands A
Trial by Jury

Plaintiff, Byling Lucas, as and for her Complaint against Defendants respectfully alleges upon information and belief as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being sexually assaulted and harassed, discriminated against on the basis of gender, and retaliated against by her employer for complaining of harassment and discrimination. Plaintiff also asserts claims for intentional infliction of emotional distress and invasion of privacy-intrusion upon seclusion.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under Title VII of the Civil Rights Act. The Court also has supplemental jurisdiction over the State and City Causes of Action.

3. Venue is proper in this district based upon Defendants' principal place of business within the Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events took place in Philadelphia Counties, in the Commonwealth of Pennsylvania within the Eastern District of Pennsylvania.

4. On or about September 6, 2016, Plaintiff filed charges with the EEOC, PCHR and PHRC against Defendants as set forth herein.

5. On or about August 4, 2017, the EEOC issued Plaintiff a Right to Sue Letter.

6. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

7. Plaintiff Byling Lucas (hereinafter also referred to as Plaintiff and "Lucas") is an individual female who is a resident of Lancaster County, in the Commonwealth of Pennsylvania.

8. At all times material, Defendant Southeastern Pennsylvania Transportation Authority (hereinafter referred to as Defendant or "SEPTA") is a body corporate and politic exercising the powers of the Commonwealth of Pennsylvania as an agency and instrumentality thereof.

9. Defendant SEPTA operates and coordinates bus and rail transportation in the counties of Bucks, Chester, Montgomery, Delaware and Philadelphia. Defendant SEPTA's website

2

states, "Equal Opportunity is the responsibility of the entire SEPTA workforce. All employees are responsible for complying with the spirit and intent of this policy."

10. At all times material, Defendant RANDY HOPSON (hereinafter referred to as "HOPSON") was an employee for Defendant SEPTA.

11. At all times material, Defendant HOPSON was employed as a Chief Instructor for SEPTA.

12. At all times material, Defendant HOPSON held supervisory authority over Plaintiff.

13. At all times material, Defendant LAMONT BAILEY (hereinafter also referred to as "BAILEY") was an employee for Defendant SEPTA.

14. At all times material, Defendant BAILEY was employed as a Bus Operator Trainer for SEPTA.

15. At all times material, Defendant BAILEY held supervisory authority over Plaintiff.

## MATERIAL FACTS

16. On or around May 23, 2016, Plaintiff began working as a Bus Operator in training for Defendant SEPTA. Defendant SEPTA assigned Plaintiff to train under the supervision of Defendant BAILEY.

17. On or around that same time, Defendant HOPSON told Plaintiff that the trainers waited for female drivers like her and the other trainees to come in to "see who they could get." This comment was made the day before Plaintiff and two other female trainees reported to the bus depot for training with their trainer, Defendant BAILEY.

18. Consistent with Defendant HOPSON's statements, on or around the second day of Plaintiff's training, Defendant BAILEY began making unwanted sexual advances

3

towards her, including but not limited to, unwelcome sexual comments about Plaintiff's breasts.

19. As Plaintiff was driving the bus, Defendant BAILEY would say, "I can see them bounce," while he stood over her, ogling at Plaintiff's breasts.

20. Defendant BAILEY also stood inappropriately and unnecessarily close to Plaintiff. Defendant BAILEY would place his arms around her while she was driving.

21. At all times Plaintiff told Defendant BAILEY that his advances were unwelcome.

22. Through the end of May 2016 and into the first week of June 2016, the comments became more pervasive and obscene, occurring daily.

23. By means of example only, Defendant BAILEY asked Plaintiff, "What does your husband do with those?" referring to Plaintiff's breasts. Defendant BAILEY also asked Plaintiff personal questions about where she slept at night, and stated that she should be sleeping with him, rather than her husband.

24. At all times, Plaintiff informed Defendant BAILEY that she was happily married for nineteen (19) years and was not at all interested in his unwelcome and unlawful sexual propositions.

25. At all times material, when Plaintiff would rebuke Defendant's propositions, Defendant BAILEY would retaliate against Plaintiff by yelling at her while she was driving and degrading Plaintiff's driving capabilities. Each time Plaintiff informed Defendant BAILEY that she was not interested, Defendant BAILEY's retaliation would escalate.

26. Despite Plaintiff's requests that he stop, Defendant BAILEY continued to hover over Plaintiff while she was driving, rub her arms, and grab Plaintiff's legs.

4

27. On or around the first week in June 2016, Plaintiff reported BAILEY's inappropriate and illegal sexual harassment to two other training supervisors, Tawanda Pinkney and Nicola Rogers. Both supervisors failed to properly investigate the unlawful behavior and failed to take appropriate corrective action.

28. Plaintiff's soon-to-be brother-in-law, Mr. Precise, also worked for Defendant SEPTA. In or around the middle of June 2016, Mr. Precise went to the Defendant HOPSON and reported Defendant BAILEY.

29. In response to Mr. Precise's complaint, on or around June 22, 2016, Defendant HOPSON initiated a meeting with all the trainers and trainees including Plaintiff and Defendant BAILEY.

30. Throughout the course of the meeting, Defendant HOPSON made regular threats towards the trainees and trainers, stating they were "not to go outside [his] house." Defendant HOPSON elaborated on his threats, threatening that the next time anyone went outside of the department with a complaint, they would be terminated.

31. Again, the Defendants failed to properly investigate the claims of sexual harassment or take appropriate corrective action.

32. In retaliation for Plaintiff's complaints of sexual harassment, Plaintiff's co-workers began to ostracize her while the trainers began to maliciously harass her. By means of example only, Defendant BAILEY and the other trainers screamed at her while she was driving to the detriment of her training. Defendant BAILEY also threatened to terminate Plaintiff on a daily basis.

33. On or around June 30, 2016, Plaintiff and the other trainees had a driving test around the City of Philadelphia. At all times during training, Plaintiff and the other trainees were told to proceed through a yellow light rather than yielding and stopping.

34. During her driving portion, Defendant Bailey yelled at Plaintiff to "go, make that light!" and she proceeded through a yellow light, not a red light. Despite the instructions Defendant BAILEY had previously and consistently provided his trainees, Defendant BAILEY screamed at Plaintiff for going through the yellow light and told her that the test was over and that she failed.

35. Defendant BAILEY immediately removed Plaintiff from the driver's seat and positioned another female trainee in her spot. Over the course of the remaining driving tests that same day, Plaintiff's co-trainees ran multiple yellow lights without receiving any form of verbal or written reprimand.

36. Despite Defendants' constant harassment and threats, Plaintiff consistently met or exceeded the minimum levels of achievement, including obeying traffic lights and controls at instructions.

37. On or around June 30, 2016, upon returning to the base, Defendants wrongfully and unlawfully terminated Plaintiff in retaliation for her complaints of sexual harassment and her unwillingness to engage in sexual behavior with her supervisor.

38. That as a result of Defendants conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

39. Plaintiff suffers from regular panic attacks and nightmares relating to Defendants' conduct. Plaintiff is having difficulty sleeping or eating.

40. As a result of defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

41. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

42. Indeed, Plaintiff exceeded the minimum levels of her training all while Defendants sexually harassed her, and otherwise altered her working conditions thereby creating a hostile working environment.

43. As defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against all the defendants, jointly and severally.

44. The above are just some examples, of some of the discrimination and retaliation to which defendants subjected Plaintiff.

45. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

46. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

47. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

48. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e ' *et seq.*, by discriminating against Plaintiff because of her sex/gender.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

49. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

50. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to ... discriminate against any of his employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

51. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

8

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (Not against Individual Defendants)

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

54. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender.

55. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW
## (Not against Individual Defendants)

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

57. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

58. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING & ABETTING UNDER STATE LAW

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

61. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A SIXTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

63. The conduct of the Defendants, individually and collectively, was intentional, personal in nature, retaliatory, extreme and outrageous so as to go beyond all possible bounds of decency.

64. Defendant BAILEY and HOPSON were acting during the course of their employment when they engaged in their sexually harassing, offensive, extreme and outrageous conduct.

65. Moreover, Defendant BAILEY and HOPSON were acting during the course of their employment when they engaged in the above conduct.

66. Defendants, including but not limited to, their owners, managers, agents and supervisors, routinely ignored and/or turned a blind eye to the sexually harassing, offensive, extreme and outrageous conduct.

67. Defendants, including but not limited to their owners, managers, agents and supervisors, retaliated against Plaintiff for complaining about the above extreme and outrageous conduct (including her claims of sexual harassment) to which she was subjected, and treated her more harshly than other employees who had not made similar complaints.

68. Such intentional, extreme and outrageous conduct caused Plaintiff to suffer humiliation, extreme embarrassment, fear for her well-being and safety, and other severe emotional distress and damages.

## AS A SEVENTH CAUSE OF ACTION FOR INVASION OF PRIVACY-INTRUSION UPON SECLUSION (AGAINST ALL DEFENDANTS)

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. As set forth more fully above, Defendants unreasonably and intentionally intruded upon the seclusion of Plaintiff's private affairs or concerns, physically and otherwise, as more fully set forth above.

71. Defendants' intrusion upon Plaintiff's private life and concerns was substantial, highly offensive and objectionable.

72. Defendant SEPTA ratified the tortious conduct of Defendants Hopson and Bailey.

73. Each of the Defendants were well aware that Plaintiff wanted to maintain her job and that Defendants' improper termination would cause her severe mental anguish, humiliation and shame.

74. Defendants conduct was willful and outrageous.

## AS A EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age,

disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

77. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff LUCAS because of Plaintiff's sex/gender.

78. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

### AS A NINTH CAUSE OF ACTION FOR RETALIATION UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

13

81. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A TENTH CAUSE OF ACTION FOR AIDING & ABETTING UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

84. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: 9/19/17

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By: _____

Christopher R. Booth, Jr., Esq.
christopher@dereksmithlaw.com
1845 Walnut Street, Suite 1601
Philadelphia, Pennsylvania 19103
(215) 391-4790